UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X

JUDY PEREZ,                                    **MEMORANDUM & ORDER**

        *Plaintiff*,                      16-CV-5206 (KAM)

   -against-

COMMISSIONER OF SOCIAL SECURITY,

        *Defendant*.

--------------------------------------X

**MATSUMOTO, United States District Judge:**

      Pursuant to 42 U.S.C. § 405(g), plaintiff Judy Perez
("plaintiff"), appeals the final decision of the Commissioner of
Social Security ("defendant" or the "Commissioner").  The
commissioner denied plaintiff's application for Disability
Insurance Benefits ("DIB") under Title II of the Social Security
Act (the "Act"), 42 U.S.C. §§ 301 *et seq.*, finding plaintiff was
not disabled within the meaning of the Act at any time from May
10, 2014 through March 30, 2016.

      Presently before the court are the parties' cross-
motions for judgment on the pleadings.  Plaintiff requests that
this action be remanded and the Commissioner requests that the
Court affirm the final decision and dismiss the action.  (*See*
Defendant's Motion, ECF No. 13; Plaintiff's Motion, ECF No. 23.)
The parties have each submitted a memorandum of law in support
of their motion (*See* Plaintiff's Memorandum ("Pl. Mem."), ECF

No. 24; Defendant's Memorandum ("Def. Mem."), ECF No. 14), and

defendant has submitted a reply memorandum. ("Def. Repl.," ECF

No. 25.) The parties have also submitted a joint stipulation of

facts relevant to the instant action. ("Stip." or the "joint

stipulation," ECF No. 28-1.)

For the reasons set forth below, the court grants

plaintiff's motion to remand, vacates the Commissioner's final

decision, and remands this action for further proceedings

consistent with this Memorandum and Order. The Commissioner's

motion is denied.

## BACKGROUND AND PROCEDURAL HISTORY

The court adopts the factual and procedural background

set forth in the Administrative Transcript;[1] the Administrative

Law Judge's March 30, 2016 decision (the "ALJ Decision," Tr. 5-

22); the parties' joint stipulation; and the parties' respective

motions for judgment on the pleadings. This Memorandum and

Order discusses only those facts relevant to the court's

determination as set forth herein.

This action arises from plaintiff's application for

DIB under Title II of the Act, which plaintiff filed

"protectively" on May 21, 2014. (Tr. 8; *see also* Tr. 159-165

(DIB application).)[2] Plaintiff alleges a disability onset date

---

[1]     Citations to the administrative record are indicated by the abbreviation "Tr."
[2]     Plaintiff's DIB application is dated May 23, 2014 (Tr. 159), but the Social
Security Administration's July 25, 2014 Disability Determination Explanation, and the

of May 10, 2014 (Tr. 8, 159), due to "[d]iffuse large B cell lymphoma,"[3] "lung mass," pneumonia, chronic lower back pain, and depression. (Tr. 47.) The Social Security Administration ("SSA") found plaintiff "[n]ot [d]isabled" within the meaning of the Act, and consequently denied her application on July 28, 2014. (Tr. 57 (Notice of Disapproved Claim dated July 28, 2014); *see also* Tr. 47-56 (containing disability determination explanation).)

On August 9, 2014, plaintiff requested an administrative hearing before an administrative law judge. (Tr. 62-63.) The record contains an "Appointment of Representative" form, which indicates that on October 6, 2014, plaintiff appointed a representative in connection with her DIB application. (Tr. 114.) The representation, however, was subsequently terminated: at a hearing before the ALJ on March 2, 2015, no testimony was heard, and the hearing was instead postponed to allow plaintiff to seek legal representation. (*See* Tr. 23-28.) The circumstances of the termination are not clear from the record.

Social Security Administration's July 25, 2014 Disability Determination Transmittal indicate that plaintiff's application was filed two days earlier, on May 21, 2014. (Tr. 47, 57.)
[3] As explained in the parties' joint stipulation, lymphoma is a form of cancer that begins in the lymph system, which in turn is part of the immune system and helps the body fight infection and disease. (Stip. ¶ 8 n.8.) B-cell lymphoma is a cancer that forms in B cells, which are part of the immune system. (*Id.*)

Plaintiff appeared without a representative at the rescheduled hearing on July 22, 2015, and stated that the legal services provider with which she had been in contact "did not take the case." (Tr. 31.) Consequently, plaintiff proceeded *pro se* at the July 22, 2015 hearing. (Tr. 8; *see also* Tr. 29-43 (July 22, 2015 hearing transcript).) At the same hearing, plaintiff testified before Administrative Law Judge James Kearns (the "ALJ"). (*Id.*) Vocational Expert Miriam Greene[4] ("VE Greene") also appeared and testified at the rescheduled hearing. (Tr. 41-43.)

On March 30, 2016, the ALJ issued the ALJ Decision, in which the ALJ found plaintiff not disabled and consequently denied her DIB claim. (Tr. 5-22.) The ALJ concluded that plaintiff had the residual functional capacity to perform her past relevant work as a data entry clerk. (Tr. 16.) Plaintiff sought review of the ALJ Decision on April 19, 2016. (Tr. 44-46.) On July 12, 2016, the Appeals Council denied plaintiff's request for review, making the ALJ Decision the final decision of the Commissioner. (Tr. 1-4.)

Plaintiff, initially proceeding *pro se*, commenced the instant appeal on September 15, 2016. (*See generally* Complaint, ECF No. 1.) The relevant period in review for a disability

---

[4]    The transcript of the hearing does not state Ms. Greene's first name (*see* Tr. 30, 41-43), but the administrative record includes her résumé. (Tr. 263-64.)

determination as to plaintiff is from May 10, 2014, the alleged onset date, through March 30, 2016, the date of the ALJ Decision. The Commissioner served motion papers on plaintiff on April 7, 2017 (*see* Letter Regarding Service, ECF No. 12), but the fully briefed motion was not filed by the initial June 30, 2017 deadline. (*See* July 6, 2017 Docket Order.) The court ordered the Commissioner to file the fully briefed motion on July 6, 2017 (*id.*), and the Commissioner filed her motion and memorandum in support on that date. (*See generally* Defendant's Motion, ECF No. 13; Def. Mem.)

The court subsequently gave plaintiff a final opportunity to file a response by July 31, 2017 (*see* July 7, 2017 Docket Order), and plaintiff filed a letter requesting an extension of time to respond to the Commissioner's motion and stating her intent to seek counsel. (*See* Letter from Plaintiff, ECF No. 20.) Plaintiff then obtained counsel, and on July 28, 2017, plaintiff's counsel filed a notice of appearance and proposed briefing schedule for plaintiff's cross-motion and the Commissioner's opposition thereto. (*See* Notice of Appearance, ECF No. 18; Proposed Scheduling Order, ECF No. 19.)

The court adopted the proposed briefing schedule on July 28, 2017 (*see* July 28, 2017 Docket Order), and on September 14, 2017, the remaining motion papers were filed. (*See generally* Plaintiff's Motion, ECF No. 23; Pl. Mem.; Def. Repl.)

Additionally, the parties filed the joint stipulation in November of 2017, at which point the parties' cross-motions became ripe for adjudication.  (*See generally* Stip.)

**DISCUSSION**

**I.    Standard of Review**

  **A. The Substantial Evidence Standard**

In reviewing a decision of the Commissioner, a district court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error."  *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (quoting *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive.").  Accordingly, the reviewing court does not conduct a *de novo* review, and may not "substitute [its] own judgment" for that of the ALJ.  *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) (citations omitted).  Instead, if there is substantial evidence in the record to support the Commissioner's factual findings,

those findings are conclusive and must be upheld.  *See* 42 U.S.C. § 405(g).

Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and "is more than a mere scintilla."  *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (internal quotation marks omitted).  Importantly, "an analysis of the substantiality of evidence must also include that which detracts from its weight," and a court reviewing an ALJ's determination must therefore "consider[] the whole record, examining the evidence from both sides." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).

**B. Five-Step Disability Evaluation**

To qualify for DIB, an individual must be disabled. 42 U.S.C. § 423(a)(1)(E).  An individual is disabled under the Act when he or she is not able "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The impairment, or impairments, must be "of such severity that [the claimant] is not only unable to do his [or her] previous work but cannot, considering his [or her] age,

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).  To be eligible for DIB an individual must also have been insured within the meaning of 42 U.S.C. § 423(c)(1) at the time he or she became disabled.  42 U.S.C. § 423(a)(1)(A); *see also* 42 U.S.C. §§ 423(c)(1) and 414(a)-(b) (defining insured status).

To determine whether a claimant is disabled, the SSA follows a five-step sequential analysis, as detailed below.  20 C.F.R. §§ 404.1520(a)(4).

### 1.  Step One

At step one, the Commissioner "consider[s] [the claimant's] work activity, if any." 20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is working and the claimant's work is substantial gainful activity, then his or her claim will be denied "regardless of [the claimant's] medical condition or [his or her] age, education, and work experience." 20 C.F.R. § 404.1520(b); *accord id.*  If the claimant is not engaged in substantial gainful employment, the Commissioner will proceed to step two.

### 2.  Step Two

At step two, the Commissioner determines whether the claimant has a "severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R.] §

404.1509, or a combination of impairments that is severe and meets the duration requirement."  20 C.F.R. § 404.1520(a)(4)(ii).

A severe impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques," and both physical and mental impairments "must be established by objective medical evidence from an acceptable medical source."  20 C.F.R. § 404.1521.  Additionally, to be considered "severe," an impairment or combination of impairments must "significantly limit [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R § 404.1522(a). Basic work activities include "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;" ability to see, hear, and speak; ability to understand, perform, and remember simple instructions; ability to use judgment; ability to respond appropriately to supervision, co-workers, and usual work situations; and ability to adjust to changes in a "routine work setting."  20 C.F.R. § 404.1522(b).

In determining whether a claimant's physical or mental impairments are of "sufficient medical severity" to "be the basis of eligibility [for benefits] under the law," the Commissioner "will consider the combined effect of all [the

claimant's] impairments without regard to whether any [particular] impairment, if considered separately, would be of sufficient severity."  20 C.F.R. §§ 404.1523(c).  In assessing severity, however, the Commissioner will not consider the claimant's age, education, or work experience.  20 C.F.R. § 404.1520(c).  When considering mental impairments, the Commissioner uses a "special technique" that examines "symptoms, signs, and laboratory findings to determine whether [the claimant] ha[s] a medically determinable mental impairment[]" or impairments, the extent of the claimant's "functional limitations" and the "severity of [his or her] mental impairment(s)."  20 C.F.R. § 404.1520a(a)-(d).  Finally, to meet the duration requirement, an impairment must be "expected to result in death, [or] must have lasted or must be expected to last for a continuous period of at least [twelve] months."  20 C.F.R. § 404.1509.

If the Commissioner determines that the impairment is medically determinable and severe, then the Commissioner will proceed to step three.

### 3.   Step Three

At step three, the Commissioner determines whether the claimant's impairment meets or equals an impairment or impairments found in the "Listing of Impairments" contained in appendix 1 of 20 C.F.R. part 404, subpart P and meets the

duration requirement.  20 C.F.R. §§ 404.1520(a)(4)(iii).  If the Commissioner determines that the claimant's impairment is "listed" or equals a "listed" impairment, and satisfies the duration requirement, then the Commissioner will find the claimant to be disabled regardless of age, education, or work experience.  20 C.F.R. § 404.1520(d).

Alternatively, if Commissioner finds that the claimant's impairment does not meet or equal a listed impairment at step three, the Commissioner will assess the claimant's residual functional capacity ("RFC").[5]  20 C.F.R. §§ 404.1520(e). A claimant's RFC is the most he or she can do in a work setting despite the limitations imposed by his or her impairment.  20 C.F.R. § 404.1545(a)(1).  In determining a claimant's RFC, the Commissioner must consider "all of the relevant medical and other evidence" in the record, 20 C.F.R. § 404.1545(a)(3), as well as the limiting effects of all of the claimant's impairments, including those that are not "severe."  20 C.F.R. §§ 404.1545(e).  The Commissioner must also assess the claimant's mental abilities by "first assess[ing] the nature and extent of [the claimant's] mental limitations and restrictions

---

[5]    The Commissioner's RFC analysis takes place before step four.  *See* 20 C.F.R. §§ 404.1520(a)(4) ("Before [the Commissioner] go[es] from step three to step four, [the Commissioner] assess[es] [the claimant's] residual functional capacity.").  Regardless of whether it is discussed as part of step three, part of step four, or an intermediate quasi-step, the RFC analysis must come after a determination that the plaintiff has a severe impairment that does not meet or equal a listed impairment at step three and before a determination as to whether the claimant can perform past relevant work at step four.  *See id.; see also* 20 C.F.R. §§ 404.1520(a)(4)(iii)-(iv).

and then determin[ing] [the claimant's] residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(c).

### 4. Step Four

At step four, the Commissioner must determine whether the claimant's RFC permits the claimant to perform his or her "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv). Past relevant work is "work that [the claimant] ha[s] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 404.1560(b)(1). If the claimant can perform his or her past relevant work, the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant cannot perform his or her past relevant work, the Commissioner will move to step five.

### 5. Step Five

In the fifth and final step of the sequential analysis, the Commissioner determines whether the claimant can perform "alternative occupations available in the national economy" in light of his or her RFC and vocational factors of age, education, and work experience. *Dixon v. Shalala*, 54 F.3d 1019, 1022 (2d Cir. 1995) (quoting *Dixon v. Heckler*, 785 F.2d 1102, 1103 (2d Cir. 1986)); *accord* 20 C.F.R. § 1520(g)(1). If the claimant can transition to other work that "exist[s] in significant numbers in the national economy," the claimant is

12

not disabled; if the claimant cannot transition, the Commissioner must find the claimant disabled.  20 C.F.R. §§ 404.1520(g)(1), 404.1560(c).

### 6.  Burden of Proof

The claimant must prove his or her case at steps one through four and "has the general burden of proving that he or she has a disability within the meaning of the Act."  *Burgess*, 537 F.3d at 128 (citation omitted).  At the fifth step, the burden shifts to the Commissioner to show that in light of the claimant's RFC, age, education, and work experience, he or she is "able to engage in gainful employment within the national economy."  *Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997); *see also Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999).  At step five, the Commissioner need not provide additional evidence about the claimant's RFC, and need only show that there is work in the national economy that the claimant can do.  20 C.F.R. § 404.1560(c)(2); *accord Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009); *see also* 20 C.F.R. § 404.1520(g)(1).

### C.  Evidentiary Rules

### 1.  ALJ's Duty to Develop the Record

Because benefits proceedings are non-adversarial in nature, "the social security ALJ, unlike a judge in a trial, must on behalf of all claimants affirmatively develop the

13

record." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508-09 (2d Cir. 2009) (quoting *Tejada*, 167 F.3d at 774); *accord Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999) ("Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." (citation omitted)).  Consequently, the ALJ generally has a duty to seek out additional information where the record before the ALJ is inadequate.  *See Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998) ("[E]ven if the clinical findings were inadequate, it was the ALJ's duty to seek additional information from [the treating physician] *sua sponte*." (citation omitted)).

The ALJ's duty to develop the record applies to both *pro se* and represented parties, and is heightened in the case of *pro se* plaintiffs.  *Batista v. Barnhart*, 326 F. Supp. 2d 345, 353 (E.D.N.Y. 2004) (citing *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982), *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999), and *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996)); *accord Moran v. Astrue*, 569 F.3d 108, 112-13 (2d Cir. 2009).  A remand for further findings may be appropriate where the ALJ does not fulfill his or her affirmative obligation to develop the record.  *See Butts v. Barnhart*, 388 F.3d 377, 386 (2d Cir. 2004) ("[I]n cases where the ALJ fail[s] to develop the record sufficiently to make

appropriate disability determinations, a remand for further
findings that would so plainly help to assure the proper
disposition of the claim is particularly appropriate." (internal
quotation marks and citation omitted)); *see also Echevarria*, 685
F.2d at 755-57 (noting that, in deciding whether substantial
evidence supports the Commissioner's findings, courts must first
ensure that claimant has a full, fair, and adequate hearing and
that all relevant facts are developed).

### 2. Medical Opinions

The Commissioner must evaluate every medical opinion
in the record, "[r]egardless of its source," when determining
whether an individual is disabled. 20 C.F.R. § 404.1527(c).
The Commissioner will give the medical opinion of a treating
source "controlling" weight if the Commissioner finds that the
opinion as to the "nature and severity of [the claimant's]
impairment(s) is well-supported by medically acceptable clinical
and laboratory diagnostic techniques and is not inconsistent
with the other substantial evidence in [the] case record." 20
C.F.R. § 404.1527(c)(2); *see also Burgess*, 537 F.3d at 128
(describing the principle as the "treating physician rule"
(citations omitted)); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir.
1999) ("When . . . substantial evidence in the record conflicts

with the treating physician's opinion, however, that opinion
will not be deemed controlling.").[6]

Medically acceptable clinical and laboratory
diagnostic techniques include consideration of a "patient's
report of complaints, or history, [a]s an essential diagnostic
tool." *Green-Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir.
2003) (quoting *Flanery v. Chater*, 112 F.3d 346, 350 (8th Cir.
1997)); *accord Burgess*, 537 F.3d at 128 (citation omitted).
Additionally, opinions from other medical sources that are not
"acceptable medical sources" under applicable regulations are
nevertheless "important and should be evaluated on key issues
such as impairment severity and functional effects." *Anderson
v. Astrue*, No. 07-CV-4969(DLI), 2009 WL 2824584, at *9 (E.D.N.Y.
Aug. 28, 2009) (quoting SSR 06-03P, Titles II and XVI:
Considering Opinions and Other Evidence from Sources Who Are Not
"Acceptable Medical Sources" in Disability Claims, 2006 WL
2329939, at *3 (SSA Aug. 9, 2006)).[7]

Importantly, the regulations set forth various
"factors" that ALJs must consider in determining how to weigh

---

[6]     The court notes that the SSA recently adopted regulations that change the
standards applicable to the review of medical opinion evidence for claims filed on or
after March 27, 2017.  *See* 20 C.F.R. §§ 404.1520c.  Because plaintiff filed her claim
before that date, the court applies the treating physician rule under 20 C.F.R. §
404.1527, and not 20 C.F.R. § 404.1520c.  *See id.*
[7]     The court notes that the SSA recently rescinded SSR 06-3P as no longer
applicable to claims filed on or after March 27, 2017, and adopted new regulations for
evaluating medical sources that are not "acceptable medical sources," as well as
nonmedical sources, for such claims.  *See Rescission of Social Security Rulings 96-2P,
96-5P, and 06-3P*, 82 Fed. Reg. 15263-01 (Mar. 27, 2017).  Because plaintiff's claim
was filed before that date, the new regulations do not apply here.

medical opinions, including treating physician opinions. *See* 20
C.F.R. § 404.1527(c). When a treating physician's opinion is
not given controlling weight, the ALJ must "comprehensively set
forth his [or her] reasons for the weight assigned to a treating
physician's opinion." *Burgess*, 537 F.3d at 129 (quoting
*Halloran*, 362 F.3d at 33); *accord* 20 C.F.R. § 404.1527(c)(2).
Failure to provide "good reasons" for the weight assigned to a
treating physician constitutes a ground for remand. *Snell*, 177
F.3d at 133 (citation omitted); *see also Halloran*, 362 F.3d at
33 ("We do not hesitate to remand when the Commissioner has not
provided 'good reasons' for the weight given to a treating
physicians opinion.").

Although applicable regulations do not exhaustively
define what constitutes a "good reason" for assigning a
particular weight to a treating physician's opinion, the ALJ
must consider, *inter alia*, "(1) the frequen[cy], length, nature,
and extent of treatment; (2) the amount of medical evidence
supporting the opinion; (3) the consistency of the opinion with
the remaining medical evidence, and (4) whether the physician is
a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir.
2013) (citing *Burgess*, 537 F.3d at 129); *see also* 20 C.F.R. §
404.1527(c)(2)-(6). The ALJ must also consider whether the
source of the medical opinion examined the claimant, and
opinions from examining sources are "[g]enerally . . . give[n]

more weight" than opinions from non-examining sources. 20 C.F.R. § 404.1527(c)(1). The foregoing factors also guide evaluation of other medical sources' opinions. *Canales v. Comm'r of Soc. Sec.*, 698 F. Supp. 2d 335, 344 (E.D.N.Y. 2010) (citing SSR 06-3P, 2006 WL 2329939, at *4); *see also* 20 C.F.R. § 404.1527(c).

Finally, although applicable regulations set forth several factors, one factor may be dispositive. *See Halloran*, 362 F.3d at 32-33 (concluding that ALJ properly applied substance of treating physician rule where the ALJ "considered the treating physician's opinion and explained the consistency of [the treating physician's] opinion 'with the record as a whole'" (citation omitted)).

### 3. Evaluation of Symptoms

In determining whether a claimant is disabled, the Commissioner considers all of the claimant's symptoms "and the extent to which [the] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). The Commissioner's evaluation of symptoms is a two-step process.

First, the Commissioner must determine whether "objective medical evidence from an acceptable medical source" shows that "[the claimant] ha[s] a medical impairment(s) which could reasonably be expected to produce the pain or other

18

symptoms alleged." *Id.* Second, if such an impairment exists, the commissioner must "evaluate the intensity and persistence of [the claimant's] symptoms," considering "all of the available evidence," to determine "how [the] symptoms limit [the claimant's] capacity for work." 20 C.F.R. § 404.1529(c)(1).

The Commissioner must consider whether the claimant's symptoms are consistent with objective medical evidence, but will not disregard a claimant's statements about their symptoms "solely because the available objective medical evidence does not substantiate [the claimant's] statements." 20 C.F.R. § 404.1529(c)(2). The Commissioner will carefully consider all information that the claimant submits about his or her symptoms, including from non-medical sources. 20 C.F.R. § 404.1529(c)(2)-(3). Further, in reaching a conclusion, the Commissioner will "consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence," including the claimant's history, laboratory findings, and "statements by [the claimant's] medical sources or other persons about how [the claimant's] symptoms affect [the claimant]." 20 C.F.R. §§ 1529(c)(4).[8]

---

[8] The SSA recently published a Social Security Ruling ("SSR") relating to the proper evaluation of a claimant's statements about his or her symptoms. This SSR modified prior SSA guidance as to an administrative law judge's ability to make a "credibility" determination regarding a claimant's statements. *Compare* SSR 16-3P, Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2016 WL 1119029 (SSA Mar. 16, 2016) *with* SSR 96-7P, Titles II and XVI: Evaluation of Symptoms in Disability

## II. The ALJ Decision

As noted above, in the ALJ Decision, the ALJ applied the five-step analysis set forth at 20 C.F.R. § 404.1520(a)(4) and concluded that plaintiff was not disabled within the meaning of the Act at any time from the May 10, 2014 alleged onset date through the March 30, 2016 date of the ALJ Decision.  (Tr. 8-16.)

### A. The ALJ's Analysis at Steps One through Three

At step one of the five-step analysis, the ALJ found that plaintiff had not engaged in "substantial gainful activity" since her alleged onset date of May 10, 2014.  (Tr. 10.)  At step two, the ALJ found that plaintiff had the following severe impairments through the date last insured: "status post lymphoma," "small right paracentral disc herniation at L-3 and L-4,"[9] and "mild degenerative osteoarthritic changes of the lower lumbar spine."[10]  (*Id.*)  With respect to plaintiff's lymphoma,

---

Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186 (SSA July 2, 1996). These rulings do not change the applicable regulations as set forth in the Code of Federal Regulations, and prior to the issuance of SSR 16-3P on March 16, 2016, SSR 96-7P controlled and allowed administrative law judges to assess the credibility of the claimant during the RFC determination. *See* SSR 96-7P, 1996 WL 374186, at *1-2.

[9]  "A herniated dis[c] refers to a problem with one of the rubbery cushions (disc[c]s) between the individual bones (vertebrae) that stack up to make [the human] spine." Mayo Clinic, *Herniated Disk, available at* https://www.mayoclinic.org/diseases-conditions/herniated-disk/symptoms-causes/syc-20354095 (last accessed Nov. 5, 2018).  The L-3 and L-4 vertebrae are located in the lumbar spine, or lower back area.  Johns Hopkins Medicine, *Lumbar Disk Disease (Herniated Disk), available at* https://www.hopkinsmedicine.org/healthlibrary/conditions/nervous_system_disorders/lumbar_disk_disease_herniated_disk_85,P00783 (last accessed Nov. 5, 2018).

[10]  Osteoarthritis of the spine is a "progressive joint disease associated with aging," which "can affect the facet joints, the intervertebral discs, and the ligaments supporting the spine." UCLA Neurosurgery, *Osteoarthritis of the Spine*,

20

the ALJ noted that plaintiff had been diagnosed with large B-cell lymphoma in May of 2014. (Tr. 11 (citing Tr. 320-22, 448-53).) Plaintiff, however, underwent chemotherapy from May through September of 2014 (Stip. ¶ 17), and her lymphoma went into remission as of September 2014. (*See Id.* ¶¶ 31, 34, 39.)

The ALJ also noted a June 2015 diagnosis of "very mild hand tendinitis," but concluded that this impairment was not severe in light of the paucity of "further treatment for this condition," and findings of "intact hand and finger dexterity and 5/5 grip strength bilaterally" by two consultative examiners. (Tr. 10 (citations omitted).) The ALJ also noted that plaintiff's "alleged pneumonia" ultimately resulted in the discovery of her lymphoma, that "[t]here was no additional treatment for pneumonia," and that "[t]his condition appeared to resolve within 12 months." (Tr. 11.) Thus, the ALJ concluded that plaintiff's tendinitis and pneumonia were not severe. (Tr. 10-11.)

At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment in the Listing of Impairments. (Tr. 11-12.) The ALJ specifically considered Listing 1.04, which addresses spinal disorders, and Listing

---

*available at* http://neurosurgery.ucla.edu/osteoarthritis-of-the-spine (last accessed Nov. 5, 2018).

13.05, which addresses lymphoma.  (Tr. 11.)  In concluding that plaintiff's impairments did not meet or medically equal the criteria of Listing 13.05, the ALJ found that plaintiff "responded well to chemotherapy, and she was in remission within 12 months of treatment."  (Tr. 11-12 (citing Tr. 955-1025).)

## B. The ALJ's RFC Analysis

The ALJ evaluated plaintiff's RFC and concluded that she "had the [RFC] to perform the full range of sedentary work as defined in 20 CFR 404.1567(a)."  In reaching this conclusion, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms she alleged, including pain and fatigue, and noted that "[i]t is clear that [plaintiff] was quite ill from May 2014 to September 2014 due to her cancer."  (Tr. 12; *see also* Tr. 14-15 (noting alleged symptoms).)

The ALJ, however, concluded that plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms [we]re not entirely consistent with the evidence."  (Tr. 12.)  The ALJ relied on "post-chemotherapy treatment notes, the October 2014 consultative examiner's objective findings, [plaintiff]'s general independence with activities of daily living," and the opinion of Dr. Bernard

Gussoff, M.D.,[11] a non-examining consultant, all of which the ALJ found to "support the finding that [plaintiff] can perform work at the RFC."  (Tr. 12; *see also* Tr. 1219 (indicating that Dr. Gussoff did not examine plaintiff).)

The October 2014 consultative examiner's report on which the ALJ relied was generated by Dr. Ram Ravi, M.D.  As the ALJ noted, Dr. Ravi, a consultative examiner, examined plaintiff in October 2014, and "reported such clinical signs as [a] mildly antalgic gait and squat to 25% of maximum, but otherwise . . . reported essentially normal findings."  (Tr. 14 (citing Tr. 484-95).)  The "essentially normal findings" the ALJ highlighted included "ability to walk on heels and toes, negative straight leg raising bilaterally, full range of motion in all extremities, full range of motion of the lumbar spine and cervical spine, normal neurologic findings, and normal strength findings."  (*Id.; see also* Tr. 485-88 (setting forth the findings of Dr. Ravi's examination).)

Dr. Ravi also noted that plaintiff complained of "severe back pain," and that her "cancer was treated with chemotherapy and that it ha[d] been in remission since September 2014."  (Tr. 14; *see also* Tr. 485.)  Further, Dr. Ravi noted that plaintiff "cooks two to three times a week, cleans one to

---

[11]    The ALJ Decision spells Dr. Gussoff's name "Gusoff" (*e.g.*, Tr. 12), but the parties' joint stipulation makes clear that the correct spelling is "Gussoff."  (Stip. ¶ 59.)

two times a week, shops once a week, showers and bathes herself four to five times a week, and dresses herself three to four times a week."  (Tr. 486.)  Dr. Ravi also concluded that plaintiff had "moderate limitations to sitting, standing, pushing, pulling, lifting, carrying, bending, and squatting due to her low back pain."  (Tr. 487; *see also* Tr. 14.)[12]

Additionally, with respect to Dr. Gussoff's opinion, the ALJ noted that Dr. Gussoff "reviewed the medical evidence" and, "[n]oting the residual effects of chemotherapy and radiation including increased risk of fatigue . . . opined that [plaintiff] can perform work at the sedentary exertional level." (Tr. 15; *see also* Tr. 1219-21 (Dr. Gussoff's opinion).)  The ALJ gave Dr. Gussoff's opinion "great weight" based on the ALJ's findings that it was supported by plaintiff's "treatment notes showing mostly normal examination findings after the completion of chemotherapy," "Dr. Ravi's objective findings," and plaintiff's "general independence with activities of daily living," and because of Dr. Gussoff's familiarity with SSA rules and regulations.  (Tr. 15.)

---

[12]    In addition to the report of his examination (Tr. 485-88), Dr. Ravi completed and submitted a Medical Source Statement dated October 22, 2014.  (Tr. 489-94.)  In the Medical Source Statement, Dr. Ravi expressed a much more expansive view of plaintiff's limitations.  For instance, he "opined th[at] [plaintiff] cannot lift/carry any weight; [and] can sit for 30 minutes, stand for 30 minutes, and walk for 30 minutes in an [eight]-hour workday."  (Tr. 14; *see also* Tr. 489-88.)  The ALJ gave Dr. Ravi's Medical Source Statement "little weight because it is not supported by the mostly normal objective examination findings or [plaintiff]'s general independence with activities of daily living."  (Tr. 14-15.)

In his RFC analysis, the ALJ gave "little weight" to the July 2014 findings of Dr. Sara Atalla, D.O., a consultative examiner (Tr. 14; *see also* Tr. 429-434 (Dr. Atalla's findings)), and to the March 2015 opinion of Dr. Ravi Kothuru, M.D. (Tr. 15; *see also* Tr. 511-18 (March 2015 Multiple Impairment Questionnaire completed by Dr. Kothuru).) As the ALJ observed in the ALJ Decision, in March 2015, Dr. Kothuru opined that plaintiff

> can sit for [one] hour and stand/walk for less
> than [one] hour in an [eight]-hour work day; must
> change positions every 30-60 minutes; cannot
> lift/carry any weight; cannot grasp, turn, or
> twist objects with either hand; cannot perform
> fine manipulations with either hand; has
> pain/fatigue that would periodically interfere
> with [plaintiff]'s ability to maintain attention
> and concentration; is incapable of performing
> work even in a low stress environment; and cannot
> push, pull, kneel, bend, or stoop.

(Tr. 15; *see also* Tr. 511-18 (Multiple Impairment Questionnaire completed by Dr. Kothuru).)

The ALJ gave Dr. Kothuru's opinion little weight "because Dr. Ravi's objective findings and [plaintiff]'s general independence with activities of daily living suggest [plaintiff] has far greater functional abilities than those noted by Dr. Kothuru." (Tr. 15 (citing Tr. 484-95).) The ALJ also wrote that Dr. Kothuru "noted he is not [plaintiff]'s primary care physician, which suggests he may not have enough information to

determine [plaintiff]'s functioning." (*Id.* (citing Tr. 496-501).)

The ALJ also concluded that the July 2014 opinion of Dr. Atalla, a consultative examiner, "cannot be given great weight." (Tr. 14 (citing Tr. 429-34).) Dr. Atalla noted that plaintiff "complains of severe back pain" and "reported that physical therapy and medication have not helped with the pain." (*Id.*) Additionally, Dr. Atalla "reported such clinical signs as antalgic gait with a slow cadence, inability to walk on heels and toes, inability to squat, inability to change for exam due to fear of injuring her back, difficulty rising from the chair, limited range of motion of the lumbar spine, and positive straight leg raising in the seated position only." (*Id.*) Dr. Atalla also reported "normal findings including normal range of the cervical spine, full range of motion of the hips and knees, normal joint findings, normal neurologic findings, 5/5 strength in all extremities, intact hand and finger dexterity, and 5/5 grip strength bilaterally." (*Id.*)

Based on her examination, Dr. Atalla opined that plaintiff should "avoid mild or greater exertion and . . . avoid public places and any locations that could put her at risk for increased infection due to" plaintiff's then-ongoing chemotherapy and consequent immunocompromised status. (*Id.*) The ALJ noted that Dr. Atella's opinion was "supported by the

examination findings," but that it was "unclear how much of the objective findings were due to the fact that [plaintiff] was only half-way through chemotherapy" at the time of Dr. Atella's examination. (Tr. 14.) The ALJ also noted that plaintiff's cancer "was in remission by September 2014," that Dr. Ravi's "October 2014 objective findings were quite different from Dr. Atalla's findings," and that consequently, Dr. Atalla's opinion "cannot be given great weight." (*Id.* (citation omitted).) Thus, Dr. Ravi's findings formed part of the ALJ's basis for the weight accorded Dr. Kothuru and Dr. Atalla's opinions.

### C. The ALJ's Analysis at Step Four

At step four, the ALJ noted plaintiff's past work as a "data entry clerk" and "telecommunication dispatcher," and concluded that it was past relevant work. (Tr. 16.) Based on VE Greene's testimony and the *Dictionary of Occupational Titles*, the ALJ concluded that plaintiff had performed her past relevant work "at the sedentary exertional level," and that plaintiff's past relevant work is "generally performed" at the same level. (Tr. 16.) Thus, the ALJ concluded that plaintiff "can perform her past relevant work as actually and generally performed," and that plaintiff was not disabled between May 10, 2014 and March 30, 2016. (*Id.*) Because the ALJ concluded that plaintiff was not disabled at step four, he did not proceed to step five.

# III. Analysis

Plaintiff asserts that the ALJ improperly weighed medical evidence and failed to develop properly the record for a *pro se* plaintiff. (Pl. Mem. at 11-21.) Plaintiff also asserts that the ALJ failed to evaluate properly plaintiff's testimony. (*Id.* at 21-23.)[13]

## A. Medical Evidence and Record Development

### 1. Parties' Contentions

According to plaintiff, the ALJ erred in giving "little weight" to Dr. Kothuru and Dr. Atalla's opinions. (*Id.* at 12-13.) Plaintiff asserts that the ALJ erred in "rejecting" Dr. Kothuru's opinion as unsupported by the medical record in light of Dr. Kothuru's statement that abnormal PET and CT scan findings supported his assessment. (Pl. Mem. at 13 (citing Tr. 511).) Plaintiff also asserts that Dr. Kothuru "relied on evidence of [plaintiff]'s chronic pain in the left shoulder, back, and chest precipitated by any movement/activity" (*id.* (citing Tr. 512-13), and that plaintiff's lower back disc herniation and degenerative changes were revealed in an MRI. (*Id.* (citing Tr. 1119-20).)

Plaintiff further contends that "[e]ven if the ALJ felt that Dr. Kothuru's reports and findings were insufficiently

---

[13]     Plaintiff does not challenge the ALJ's determination that neither her tendinitis nor her pneumonia was severe, nor does plaintiff challenge the ALJ Decision's silence as to any limiting effects of those impairments in its RFC analysis. (*See generally* Pl. Mem.)

explained," in light of plaintiff's *pro se* status, the ALJ "should have taken steps to clarify the evidence," including by "elicit[ing] further information from Dr. Kothuru" or "obtain[ing] a report from another treating doctor." (*Id.* at 14-15.) According to plaintiff, rather than take these steps, the ALJ impermissibly "relied on contrary opinions from non-examining oncologist Dr. Gussoff." (*Id.* at 15 (citing Tr. 15).) Additionally, plaintiff submits that the ALJ "erred by rejecting . . . Dr. Kothuru['s] [opinion] based on [plaintiff']s activities of daily living" because plaintiff's "uncontradicted testimony" that her activities of daily living are limited. (*Id.* at 17.)

Plaintiff also asserts that the ALJ improperly weighed Dr. Atalla's opinion. According to plaintiff, although the ALJ characterized Dr. Atalla's opinion as "only applicable to [p]laintiff's functioning prior to the time she completed chemotherapy in September 2014," the opinion "focused on [plaintiff]'s musculoskeletal impairments." (Pl. Mem. at 19.) Further, plaintiff notes that Dr. Atalla "did not attribute" to plaintiff's cancer or cancer treatment "any of the symptoms and limitations" she identified, and consequently, "greater consideration should have been given to the report." (*Id.*)

Additionally, plaintiff contends that the ALJ committed error in weighing Dr. Ravi's opinion. Plaintiff

argues that Dr. Ravi's examination "was hardly 'normal' as characterized by the ALJ" in light of plaintiff's "antalgic gait and squatting to only 25 percent of full." (*Id.* at 21 (citing Tr. 486).)  Plaintiff also takes issue with the ALJ's "conclusion that [plaintiff's] 'moderate' limitation [in] sitting," as identified in the portion of Dr. Ravi's opinion that the ALJ credited, "is consistent with the full range of sedentary work." (*Id.* at 20 (citations omitted).)  According to plaintiff, the ALJ's interpretation of the credited portion of Dr. Ravi's opinion "conflicts with the more detailed limitations described by [Dr. Ravi]," which the ALJ accorded little weight. (*Id.*)

Defendant contends that the ALJ properly weighed the medical evidence, particularly in light of Dr. Gussoff's opinion. (*See* Def. Repl. at 3-4.)  According to defendant, the ALJ did not err in "relying on Dr. Gussoff's opinion (over that of Dr. Kothuru)" because "opinions of non-examining sources may override opinions of treating sources if they are well supported by substantial evidence of record." (*Id.* at 6 (citing *Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995) and *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993)).)  Additionally, defendant asserts that Dr. Gussoff "was familiar with the rules and regulations of the disability program," and accordingly, it was reasonable for the ALJ to "interpret[] Dr. Gussoff's

definition of 'sedentary work' to be in line with the meaning of that term under applicable regulations." (*Id.* (citing Tr. 15).)[14]

Defendant further asserts that the ALJ was not required to elicit additional medical opinions because "the ALJ already had hundreds of pages of treatment notes from [p]laintiff's clinicians . . . together with two consultative examiners' reports and the opinion of Dr. Gussoff." (*Id.* at 5 (citing Tr. 287-1221).) In light of these records, defendant contends that "[t]here were no obvious deficiencies, and the record was more than sufficient to render a disability determination." (*Id.* at 6 (citing *Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013)).)

### 2. Discussion

On review, the court concludes that substantial evidence does not support the weight the ALJ assigned Dr. Gussoff's opinion, on which the ALJ relied in finding that plaintiff had the RFC "to perform the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a)" without any further limitations. The court further concludes that substantial evidence does not support the ALJ's evaluation of Dr. Ravi's opinion. Further, additional record development is necessary with respect to the opinions of Dr. Gussoff and Dr. Ravi.

---

[14] Defendant also notes that sedentary work is "the least demanding category of work under the Commissioner's regulations." (Def. Repl. at 3 (citing 20 C.F.R. Pt. 404, Subpt. P, App'x 2 § 201.00(h)(4)).)

Accordingly, the court vacates the ALJ Decision and remands this action for further proceedings.

### i.  Defects in Dr. Gussoff's Opinion

The ALJ erred in relying on Dr. Gussoff's opinion to override the opinions of Drs. Kothuru and Atalla based on Second Circuit authority regarding the proper evaluation of non-examining consultants' opinions.  The Second Circuit has found that remand is appropriate where an ALJ relies on a non-examining consultant to override the opinions of examining physicians and the non-examining consultant does not consider the entirety of the claimant's medical records.  *See Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x 197, 200 (2d Cir. 2010) (remanding where non-examining physician "made his assessment without reviewing the complete record of [the claimant's] medical history" (citation omitted)); *see also Hidalgo v. Bowen*, 822 F.2d 294, 298 (2d Cir. 1987) (remanding where ALJ overrode treating physician opinion based on opinion of non-examining consultant who "did not have before him the complete medical records of the claimant," which included clinical findings supporting the treating physician's diagnosis).  As the Second Circuit has explained, in such situations, "[c]onsideration of [the claimant]'s entire medical record[] might . . . alter[] [the non-examining physician]'s conclusions." *Gunter*, 361 F. App'x at 200 (citation omitted).

Here, Dr. Gussoff's opinion, which is based entirely on his review of plaintiff's medical records (*see* Tr. 1219), mischaracterizes plaintiff's impairments and refers to non-existent records. Specifically, Dr. Gussoff's responses to questions on the "Medical Interrogatory Physical Impairments – Adults" form that sets forth his opinion characterize plaintiff's lower back impairment as "low back pain," and note that plaintiff's "x-rays" were "neg[ative]." (Tr. 1219-20.)

The record clearly indicates that plaintiff's lower back impairment is not merely non-specific, general "low back pain." Instead, plaintiff suffers from a herniated disc and osteoarthritic changes of the lumbar spine, (Stip. ¶ 52 (citing Tr. 1119-20)), which conditions were confirmed by the objective findings of an MRI taken prior to Dr. Gussoff's review of plaintiff's records. (*Id.*) Additionally, as the parties have acknowledged, although Dr. Gussoff referred to negative "x-rays," the medical records to which he cited do not include x-rays, and "[t]he record does not appear to contain x-rays of [p]laintiff's lumbar spine." (*Id.* ¶ 59 and ¶ 59 n.20.) Therefore, Dr. Gussoff's opinion is based on a back impairment that is different from plaintiff's actual back impairments, and on nonexistent medical records.

Moreover, consideration of plaintiff's actual impairments, which are more severe than general, non-specific

"low back pain," and of plaintiff's MRI results "might have altered Dr. [Gussoff]'s conclusions." *Gunter*, 361 F. App'x at 200. Consequently, the ALJ erred in relying on Dr. Gussoff's opinion.

### ii. Application of 20 C.F.R. § 404.1527 to Dr. Gussoff's Opinion

The ALJ also erred in overriding other medical opinions based on Dr. Gussoff's opinion in light of 20 C.F.R. § 404.1527, which governs the evaluation of medical opinion evidence for claims filed prior to March 27, 2017. Several of the factors set forth in that regulation indicate that Dr. Gussoff's opinion should be given less, not more, weight.

Specifically, Dr. Gussoff's lack of any examining or treating relationship with plaintiff indicate that his opinion should be given less weight pursuant to 20 C.F.R. §§ 404.1527(c)(1)-(2), which provide that treating and examining sources, respectively, are given more weight. Further, although the Medical Interrogatory form Dr. Gussoff completed expressly requested that the preparer "cite the specific evidence supporting [his or her] opinion" as to the subject's functional imitations," Dr. Gussoff's opinion cites no evidence, and instead merely states his opinion regarding plaintiff's functional limitations without any discussion of the basis for, or reasoning underlying, the opinion. (*See* Tr. 1221.)

Moreover, and as discussed above, Dr. Gussoff's opinion mischaracterizes plaintiff's lower back impairment and states that Dr. Gussoff reviewed nonexistent evidence. Thus, Dr. Gussoff's opinion should be given less weight pursuant to 20 C.F.R. § 404.1527(c)(3), which provides that "[t]he more a medical source presents relevant evidence to support a medical opinion," and "the better an explanation a source provides for a medical opinion," the more weight the Commissioner will afford the source.

Further, plaintiff asserts, and defendant does not dispute, that Dr. Gussoff is an oncologist. (*See* Pl. Mem. at 16-17; Def. Repl. at 6-7.) Thus, his opinion regarding the limiting effects of plaintiff's spine-related impairments should be given less weight pursuant to 20 C.F.R. § 404.1527(c)(5), which requires that the SSA "generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist."

Additionally, based on the present record, Dr. Gussoff's opinion is not entitled to greater weight than any other opinion under 20 C.F.R. § 404.1527(c)(4), which provides that medical opinions that are "more consistent . . . with the record as a whole" will "[g]enerally" be given more weight." In evaluating plaintiff's RFC, the ALJ referred to "generally

normal" physical examination findings from 2015.  (*See* Tr. 13.)

One of the records the ALJ cited, a report prepared by Dr. Boris

Avezbakiyev in 2015, indicates that plaintiff "reported she was

experiencing left chest wall soreness but reported no other

symptoms."  (Tr. 13 (citing Tr. 1111).)

        Dr. Avezbakiyev's report, however, is silent as to the

condition of plaintiff's lumbar spine, and there is no

indication that the report sought to convey anything by its

silence, particularly in light of the fact that Dr. Boris

Avezbakiyev is an oncologist and hematologist.  (Stip. ¶ 11.)

Accordingly, Dr. Avezbakiyev's report is of limited utility in

determining whether Dr. Gussoff's opinion is consistent with the

record as a whole.  *Cf. Rosa*, 168 F.3d at 81 (remanding where,

in relevant part, the ALJ relied on medical records to support

his conclusion, but those records "were consistent with th[e]

[ALJ's] conclusion . . . only to the extent that they were

silent on the [relevant] issue . . . [and] there was no

indication in the reports that the consultants intended anything

by their silence.").

        The other records the ALJ cited reported numerous

problems with plaintiff's lower back, including tenderness in

plaintiff's sacroiliac joint,[15] "limited range of motion of the

---

[15]    "The sacroiliac joint lies next to the bottom of the spine, below the lumbar
spine and above the tailbone," and "[d]ysfunction in the sacroiliac joint is thought
to cause low back pain and/or leg pain.  The leg pain can be particularly difficult

lumbar spine, lumbar spine muscle spasms, and lumbar tenderness," as well as plaintiff's lumbar disc herniation and degenerative osteoarthritic changes of the lower lumbar spine. (*Id.* (citing Tr. 1096, 1116, 1119-20).)  Neither the ALJ nor defendant has explained why the foregoing findings are more consistent with Dr. Gussoff's opinion, to which the ALJ gave great weight, than with Dr. Kothuru's opinion and Dr. Ravi's Medical Source Statement, to which the ALJ gave little weight.

The ALJ also concluded that Dr. Gussoff's opinion was supported by "Dr. Ravi's objective findings" and by plaintiff's "general independence with activities of daily living."  (Tr. 15.)  Dr. Ravi's objective findings, however, resulted in Dr. Ravi's conclusion that plaintiff had undefined "moderate limitations" to her ability to sit (Tr. 487), which the ALJ credited.  (Tr. 14.)  Thus, Dr. Ravi's objective findings do not necessarily support Dr. Gussoff's conclusion that plaintiff can perform sedentary work without further limitation.  Instead, the extent to which Dr. Ravi's objective findings support Dr. Gussoff's opinion depends on what Dr. Ravi meant by "moderate limitations" to plaintiff's ability to sit.  As discussed below, however, the only information regarding the nature of

---

and may feel similar to sciatica *or pain caused by a lumbar disc herniation*."  Cedars-Sinai Hospital, *Sacroiliac Joint Dysfunction*, *available at* https://www.cedars-sinai.edu/Patients/Health-Conditions/Sacroiliac-Joint-Dysfunction.aspx (last accessed November 6, 2018).

plaintiff's "moderate limitations" as identified by Dr. Ravi is set forth in Dr. Ravi's Medical Source Statement, to which the ALJ assigned little weight.

Similarly, plaintiff's activities of daily living do not necessarily support Dr. Gussoff's opinion regarding plaintiff's functional limitations.  In its discussion of Dr. Ravi's examination of plaintiff, the ALJ Decision states that plaintiff "reported she can cook, clean, shop, shower, and bathe herself independently."  (Tr. 14.)  The ALJ Decision also cites Dr. Ravi's report as the sole evidence supporting its assertion that plaintiff was "general[ly] independen[t] with activities of daily living.  (Tr. 15.)  Dr. Ravi's report, however, states only that

> [plaintiff] cooks two to three times a week, cleans one to two times a week, shops once a week, showers and bathes herself four to five times a week, and dresses herself three to four times a week.  She states that she does not do laundry or childcare.

(Tr. 486.)

Nothing in the foregoing statement indicates that plaintiff was able to undertake the activities of daily living without any difficulty or limitation.  Moreover, a claimant's ability to "'endure pain in order to pursue important goals,' such as attending church and helping his [or her] [spouse] on occasion go shopping for their family," should not be "h[e]ld

38

. . . against" a claimant "unless [his or her] conduct truly showed that he is capable of working."  *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (quoting *Nelson v. Bowen*, 882 F.2d 45, 49 (2d Cir. 1989)).

Here, neither the ALJ Decision, nor any other evidence or analysis in the record, establishes that plaintiff's activities of daily living as described by Dr. Ravi "truly show[] that [plaintiff] is capable of working."  Thus, there is not substantial evidence for the proposition that the activities described in Dr. Ravi's report establish plaintiff's ability to perform sedentary work without any further limitations.

In light of the foregoing records and activities of daily living, the court finds insufficient support for defendant's assertion that Dr. Gussoff's opinion was "more consistent with the record as a whole" than other opinions. (Def. Repl. at 2; *see also* Tr. 15 (assigning Dr. Gussoff's opinion great weight because of consistency with the record).) Instead, Dr. Gussoff's opinion regarding plaintiff's limitations is no more consistent with the record as a whole than other medical opinions, particularly Dr. Kothuru's opinion and Dr. Ravi's Medical Source Statement.  Consequently, Dr. Gussoff's opinion should be weighed no more heavily than other medical opinions based on consistency with the record under of 20 C.F.R. § 404.1527(c)(4).

The only factor affirmatively favoring Dr. Gussoff's opinion is his apparent familiarity with SSA regulations. (*See* Tr. 15; 20 C.F.R § 404.1527(c)(6).) This factor, unlike the factors disfavoring Dr. Gussoff's opinion, has nothing to do with Dr. Gussoff's knowledge of plaintiff or her condition, nor with the supportability of Dr. Gussoff's opinion in light of other medical evidence. Consequently, Dr. Gussoff's familiarity with SSA regulations does not suffice to overcome the numerous factors indicating that his opinion should be given less weight.

### iii. Interpretation and Weight Accorded Dr. Ravi's Opinion

The ALJ also committed error in evaluating Dr. Ravi's opinion and Medical Source Statement. The ALJ gave Dr. Ravi's Medical Source Statement "little weight because it [wa]s not supported by the mostly normal objective findings or [plaintiff]'s general independence with activities of daily living." (Tr. 15-16.) As discussed above, however, the record does not contain a basis to conclude that either the objective findings made during plaintiff's examinations, or plaintiff's activities of daily living, indicate that plaintiff can perform sedentary work without further limitation. Thus, substantial evidence does not support the minimal weight the ALJ assigned Dr. Ravi's Medical Source Statement.

Additionally, as noted above, in the portion of Dr. Ravi's report that the ALJ gave "great weight," "Dr. Ravi opined th[at] [plaintiff] has moderate limitations to sitting." (Tr. 14 (citing Tr. 484-95).) Although the ALJ Decision mentions this portion of Dr. Ravi's opinion, neither the portion of Dr. Ravi's opinion that the ALJ credited, nor the ALJ Decision, make clear what plaintiff's "moderate limitations to sitting" consisted of.

Without further explanation of what Dr. Ravi meant by "moderate limitations to sitting," however, the court cannot determine whether Dr. Ravi's appraisal of plaintiff's limitations "is consistent with the full range of sedentary work," and supports Dr. Gussoff's opinion and the ALJ's RFC determination, or instead, as plaintiff contends, "conflicts with the more detailed limitations described by [Dr. Ravi]." (Pl. Mem. at 20 (citations omitted).) The only further information in the record as to what plaintiff's "moderate limitations to sitting" may consist of, however, is set forth in Dr. Ravi's Medical Source Statement (Tr. 489-95), to which the ALJ assigned "little weight" without further record development. (Tr. 14-15.) Thus, the record lacks sufficient evidence regarding the ALJ's interpretation of the portion of Dr. Ravi's opinion that the ALJ credited.

### iii. *Summary*

The above-discussed flaws in Dr. Gussoff's opinion and errors in weighing medical evidence require that the ALJ Decision be vacated and this action remanded for further proceedings. Dr. Gussoff's opinion states that it is based on records that do not exist and assumptions about plaintiff's impairments that are incorrect. Further, the factors set forth in 20 C.F.R. § 404.1527 weigh against crediting Dr. Gussoff's opinion over those of examining sources. Consequently, the court concludes that substantial evidence does not support the weight the ALJ accorded Dr. Gussoff's opinion relative to other opinions issued by physicians who, unlike Dr. Gussoff, examined plaintiff.

Additionally, although the ALJ gave "great weight" to the portion of Dr. Ravi's opinion in which Dr. Ravi concluded that plaintiff has "moderate limitations to sitting," the ALJ gave little weight to Dr. Ravi's Medical Source Statement, which set forh in greater detail Dr. Ravi's appraisal of the limitations to plaintiff's ability to sit. The records that the ALJ cited in discounting the Medical Source Statement, however, are not clearly inconsistent with the Medical Source Statement. Moreover, nothing in the record indicates that the ALJ made any effort to determine what plaintiff's "moderate limitations to sitting" may have consisted of, if not the limitations set forth

in Dr. Ravi's Medical Source Statement.  Consequently, the court
concludes that substantial evidence does not support the ALJ's
decision to give Dr. Ravi's Medical Source Statement little
weight, or the ALJ's interpretation of the portion of Dr. Ravi's
opinion that the ALJ gave "great weight," and that the record
regarding Dr. Ravi's opinion is insufficiently developed.

Particularly in light of plaintiff's *pro se* status
before the ALJ, the ALJ should have, at a minimum, developed the
record further as a result of Dr. Gussoff's mischaracterization
of plaintiff's lower back impairments and stated reliance on
nonexistent records.  The ALJ should have also developed the
record regarding the precise nature of the "moderate
limitations" to plaintiff's ability to sit referenced in the
portion of Dr. Ravi's opinion to which the ALJ gave "great
weight."  (Tr. 14-15, 487.)  Further, the ALJ's errors in
weighing opinion evidence were not harmless.  The ALJ rejected
Dr. Ravi's conclusion that plaintiff's limitations were more
significant than those set forth in Dr. Gussoff's opinion,
essentially adopted Dr. Gussoff's opinion that plaintiff had the
RFC to perform sedentary work, and relied on Dr. Gussoff's
opinion in weighing plaintiff's testimony.  (Tr. 15-16.)  Thus,
the ALJ's errors directly affected the outcome of plaintiff's
DIB application.

The court declines, however, to conclude affirmatively that the ALJ should have assigned controlling weight to Dr. Kothuru's analysis of plaintiff's limitations, or should have weighed Dr. Atalla's opinion more heavily.  The record does not establish that Dr. Kothuru's opinion is entitled to controlling weight, nor does the record establish that Dr. Atalla's opinion should have been accorded more weight.  Instead, the record reveals the absence of substantial evidence for the weight the ALJ assigned to Dr. Gussoff's opinion and Dr. Ravi's Medical Source Statement, and the need for further record development regarding medical opinion evidence.  Once the record is developed further and the opinions of Dr. Gussoff and Dr. Ravi are reevaluated in light of the properly developed record, the ALJ should reconsider the weight accorded to the opinions of Dr. Kothuru and Dr. Atalla.

Accordingly, the ALJ Decision is vacated and this action is remanded for reevaluation of medical evidence, including the proper weight to assign each relevant medical opinion, as well as for record development necessary to undertake the foregoing reevaluation.  On remand, the ALJ shall develop all relevant facts, *see Echevarria*, 685 F.2d at 755-57, including, without limitation, whether the proper characterization of plaintiff's lower back impairment and review of plaintiff's MRI scan change Dr. Gussoff's conclusion and, if

not, why not.  Additionally, and to the extent necessary in light of any revised evaluation of medical opinion evidence, the ALJ shall determine what the "moderate limitations" noted in Dr. Ravi's report consist of, and how they impact plaintiff's ability to perform sedentary work.  The ALJ shall also apply properly the factors set forth in 20 C.F.R. § 404.1527.

**B.    Evaluation of Plaintiff's Testimony**

Plaintiff also contends that the ALJ erred in evaluating her testimony.  The ALJ relied on medical evidence in evaluating plaintiff's testimony, and specifically cited "Dr. Ravi's objective findings" and "Dr. Gussoff's opinion" in concluding that plaintiff's testimony "is not fully supported by the evidence."  (Tr. 15-16.)  As discussed above, however, the the ALJ erred in weighing Dr. Gussoff's opinion, and further record development is necessary with respect to Dr. Gussoff's and Dr. Ravi's opinions.  Thus, the determinations underlying the ALJ's evaluation of plaintiff's testimony are flawed, and the ALJ must reevaluate plaintiff's testimony following a reevaluation of medical opinion evidence and further record development.

**CONCLUSION**

For the foregoing reasons, the court concludes that the ALJ committed prejudicial error in weighing medical opinion evidence relevant to plaintiff's RFC.  Accordingly, the court

DENIES the Commissioner's motion for judgment on the pleadings, and GRANTS IN PART plaintiff's cross-motion to the extent that the ALJ Decision is VACATED and this action is REMANDED for further proceedings consistent with this Memorandum and Order. Specifically, on remand, the ALJ shall:

(1) Determine plaintiff's RFC giving full and fair consideration to all evidence in the record and developing the record, including by affirmatively seeking clarifying and/or additional information regarding plaintiff's lumbar spine and lower back-related impairments and resulting limitations, and by seeking clarifying and/or additional information from medical sources regarding the sources' appraisal of plaintiff's impairments and resulting functional limitations, including clarification regarding the bases for the sources' opinions, as necessary and consistent with this Memorandum and Order;

(2) Re-assess the weight accorded to each medical opinion in light of the fully-developed record as a whole and using the factors enumerated in 20 C.F.R. § 404.1527(c);

(3) Reassess the weight accorded to plaintiff's testimony in light of the record as a whole and under all applicable regulations;

(4) If a vocational expert is consulted, present a hypothetical that includes all of plaintiff's relevant limitations, determined in accordance with applicable law and regulations and consistent with the record and this Memorandum and Order, and state with specificity the basis for any reliance on the vocational expert's opinion.

The Clerk of Court is respectfully directed to close the case.

**SO ORDERED.**

Dated: Brooklyn, New York
       January 29, 2019

_____/s/_____
**KIYO A. MATSUMOTO**
United States District Judge
Eastern District of New York